## Charles H. Parker, Plaintiff-Appellee, v. Jean Welch Parker Ter Bush, Defendant-Appellant.

### Gen. No. 10,494.

Opinion filed August 28, 1951. Rehearing denied October 2, 1951. Released for publication October 2, 1951.

Russell W. Keeney, and Gordon Moffett, both of Wheaton, for appellant.

Mark Bemis, of Westmont, and Edgar J. Elliott, of Wheaton, for appellee.

Mr. Justice Dove delivered the opinion of the court.

On September 21, 1938, the circuit court of Winnebago county rendered a decree in a divorce proceeding then pending in that court wherein Pauline Parker, now Pauline Wilson, a cousin of the defendant in the instant case, was the plaintiff and the plaintiff in the instant case was the defendant. That decree was ren-

dered upon the complaint and answer of the defendant and in addition to awarding the plaintiff a divorce on the grounds of extreme and repeated cruelty awarded to the plaintiff the custody of the minor son of the parties, then three years of age.

This decree found that the defendant had agreed to pay and the plaintiff had agreed to accept "in full settlement and adjustment of their property interests and in consideration of the plaintiff's continued right to support, the sum of $750.00 and that in and by said agreement between the parties, no alimony should be paid by the defendant to the plaintiff for her own support and maintenance." The decree then ordered the defendant to pay to the plaintiff the sum of $750 in full discharge of all liability for alimony to be paid to the plaintiff for her own support and concluded: "And it appearing to the court that said sum of $750.00 has been paid to the plaintiff in open court, said decree is hereby declared to be satisfied and the defendant is discharged of all claims for alimony, support and maintenance of the plaintiff. . . . It is further ordered by the court that each of the parties hereto shall hold his or her property free and clear of any claim of the other that may have arisen or attached by virtue of the marital relation heretofore existing between the parties."

On June 26, 1941, the defendant in the instant proceeding filed her verified complaint for divorce in the circuit court of Du Page county alleging, among other things, that the parties thereto had entered into a property-settlement agreement and that the terms thereof are as follows:

"(a) That Charles Parker (the plaintiff in the instant proceeding) shall pay to Jean Parker, in lieu of alimony and in full settlement of his marital obligations, the sum of seven hundred fifty dollars; that said

sum shall be paid as follows: $250.00 on the day the decree is entered. (The terms of payment of the balance is then set forth.)

"(b) That said Charles Parker shall pay the costs of said divorce proceedings, including solicitor's fees to Carl O. Bue, attorney for Jean Parker, in the amount of $150.00, said fees to be paid prior to the entry of the decree for divorce.

"(c) That said Jean Parker shall be entitled to all articles belonging to her such as: linens, dishes, bedspreads, silverware, draperies, curtains, kitchen set, set of pots and pans and flatiron."

To this complaint an answer was filed and on July 18, 1941, a decree was rendered granting the plaintiff therein, the defendant in the instant proceeding, a divorce from the plaintiff in the instant proceeding and finding, among other things, "that defendant has at the time hereof, paid plaintiff's attorney's fees, the court costs herein and has paid to plaintiff the sum of $250.00, all in accordance with the settlement agreement entered into between the parties hereto and more fully set forth in the complaint filed by plaintiff herein." Thereafter, the defendant acknowledged satisfaction of the decree, the payment to her of the several amounts and the receipt of the various articles of personal property.

On June 10, 1949, the instant verified complaint was filed by Charles H. Parker (defendant in the divorce proceeding) against his former wife, now Jean Ter Bush. The complaint, as amended, alleged, among other things, that the plaintiff was the owner of certain described land in Du Page county; that the parties hereto were married on June 17, 1939, and lived together as husband and wife until February 23, 1941, at which time they separated; that on June 26, 1941, the defendant filed her complaint for divorce and that a decree of divorce was thereafter granted; that sub-

356

sequent to February 23, 1941, and prior to June 26, 1941, the parties entered into an oral property settlement, which agreement was negotiated by the plaintiff (in the instant suit) personally and without counsel and by the plaintiff in the divorce suit (the defendant in the instant proceeding) whereby plaintiff agreed to waive any alimony from said plaintiff and to release all rights of any kind whatsoever in and to any and all of the property then owned by the plaintiff; that the terms of said property-settlement agreement were made known to defendant and to the court during the hearing on the complaint for divorce, but through inadvertence the language decreeing that said defendant be barred of all rights of any kind (including dower) in or to the property of the plaintiff was omitted from the draft of the decree as prepared by counsel for defendant and was for this reason inadvertently omitted from the decree of divorce entered on July 18, 1941.

The complaint in the instant case then alleged that the complaint in the divorce proceeding recited that a property-settlement agreement had been entered into by the parties and set forth portions thereof and then alleged that the plaintiff herein had complied with the terms of said oral property settlement and that on October 1, 1945, a satisfaction of said decree executed by defendant was filed in the office of the circuit clerk of Du Page county. It is then alleged that the terms of said oral property agreement were just and advantageous to the plaintiff in view of the fact that he then owned an equitable title to the real estate described in the complaint upon which large sums of money were due and owing.

The complaint then charged that notwithstanding said oral property settlement, the defendant has asserted an inchoate right of dower in his described real estate, giving rise to an apparent cloud upon his title

which has the effect of depreciating the value thereof and to prevent plaintiff from selling the same. The complaint prayed for a decree declaring defendant to have no right, title or interest of any kind by way of inchoate dower or otherwise in and to said premises.

The answer of the defendant admitted the rendition of the divorce decree and that plaintiff paid her the sum of $750 as provided therein but denied that any oral or written property-settlement or agreement was ever entered into or that she ever consented to abandon or surrender any right or rights which she may have had before or after the entry of the divorce decree in any real estate in which plaintiff had any legal or equitable interest. By her answer she insists she has an inchoate right of dower in all of said real estate owned by the plaintiff or to which he had a legal or equitable title at any time during his marriage to defendant and that her interest therein is a valid, binding and subsisting one. The issues thus made by the pleadings were referred to the master with directions to take the proofs of the respective parties and report his conclusions of law and fact to the court.

The master reported to the court the evidence and his findings recommending a decree be granted the plaintiff and that the defendant be required to release her dower interest in the premises described in the complaint. Objections to the master's findings were overruled by the master and, upon a hearing before the chancellor, the exceptions of the defendant to the master's report were likewise overruled, the report and conclusions of the master were approved and a decree rendered in accordance therewith. To reverse this decree defendant appeals.

The record discloses that appellee had previously been married to the said Pauline Parker, now Wilson, who is a cousin of appellant and that these parties were divorced as heretofore set forth. The master

found, and his findings are based upon the testimony of Pauline Wilson and other witnesses, that appellant demanded and received from appellee the same property settlement that appellee had made with Pauline Parker Wilson. Pauline Wilson also testified that appellant told her in the latter part of 1941 that she had received from appellee $750, that she had received her personal belongings but had to get her kitchen set and wanted to get it as soon as possible and then she was completely finished with him and was "not interested in his real estate or personal belongings." Ella Marson and Harry Marson both testified that appellant told them, shortly after the divorce, that she was "all finished" with appellee, had nothing else coming to her and was through with him.

Carl O. Bue, who represented appellant as her attorney in the divorce proceeding, testified that appellant and appellee were in his office on June 6, 1941, prior to the time the complaint was filed but after appellant had first consulted him about procuring a divorce. As abstracted, his testimony follows: "I asked Mrs. Parker if she had talked to Mr. Parker about a settlement and she said yes. I asked her what her ideas were. She said she wanted $750.00 and she wanted her own personal effects, things that belonged to her. She wanted him to pay the costs of the proceedings; she wanted him to pay the attorney fees; the proceedings were to be uncontested, and I think she also said she wanted to use her maiden name. Mr. Parker said he thought that was too much money, and she said she ought to get that much because that was what he paid on his previous divorce, and she ought to be entitled to that much. Mr. Parker said that if he did make that kind of a deal he would not be able to pay $750.00 in cash; he would have to pay part of it and then get some time on the rest. He also inquired if he made such an agreement whether that would completely release him

from all other obligations to Mrs. Parker, and I told him that was my understanding of what she had just said. I asked Mrs. Parker if that was what she intended and she said yes. I said, 'Mrs. Parker, you understand before you make this deal, that if you do make it, it doesn't make any difference how wealthly he may become or how bad off you may be, you are through; you have settled your accounts and you will have no more claim than if you had never been married.' I asked them if they were both satisfied with that arrangement, and they both said they were." This witness was then asked what if anything else was said, replied: "What was said was that if this arrangement —if this settlement were made, she would be waiving all further claim to anything against Mr. Parker the same as if they had never been married." This witness further testified that in discussing the question of a property settlement with Mrs. Parker, Mrs. Parker stated that she said she ought to get the same amount as the other wife.

Appellee testified that he kept a certified copy of the decree for divorce granted his former wife, Pauline Parker, in a dresser drawer in his home, and that he had seen appellee read it and that he had discussed the terms of that decree with her; that on June 6, 1941, he went to the home of appellee's parents, and appellant accompanied him in his car to the office of Mr. Bue, the attorney; that on the way to Mr. Bue's office, he asked her to "patch up" their differences, but she replied that she had already started two divorce proceedings before and that there was no use arguing about this one because she was going through with it. He then asked her: "Well, what do you think about a settlement?" and she replied: "Surely I have been as good a wife as Pauline and I am entitled to the same amount. You were willing to give her $750.00 and you paid her lawyer's fee and you gave her her personal

belongings. I will waive all of my right in your property and waive all alimony.'' When they arrived at Mr. Bue's office, according to the testimony of appellee, appellee was introduced to Mr. Bue, and Mr. Bue inquired of appellant whether she still wanted a divorce and appellant replied in the affirmative. Mr. Bue then inquired whether she had reached any agreement or settlement, and she replied: ''Yes, I want $750.00. I want Mr. Parker to pay the lawyer and court costs and I want my personal belongings, dishes, clothing and I will give him a complete release of his property and I will waive all alimony just like my cousin did.''

According to the testimony of appellant and her mother, appellee took them to Mr. Bue's office in Downers Grove either the latter part of April or the first of May in 1941, and he introduced them to Mr. Bue; that she was again in Mr. Bue's office in Elmhurst sometime in May, prior to Decoration Day, at which time Mr. Bue made a suggestion of $750 alimony. Appellant further testified that the next time she was in Mr. Bue's office was on June 6th; that she was accompanied there by her mother and when they arrived appellee was already there; she denied that she had any conversation with him such as detailed by appellee and Mr. Bue and testified that nothing was said about any settlement; that all she did was to sign the divorce papers and left. Appellant also denied that she had the conversations testified to by Mr. and Mrs. Marson and by Mrs. Pauline Parker Wilson.

Mr. and Mrs. James E. Welch, the parents of appellant, testified that they were present in Mr. Bue's Elmhurst office about June 6, 1941; that appellee was present; that something was said about $750 alimony and appellee said he couldn't pay it all at one time and that he was to make it in monthly payments. Mr. Welch testified that: ''Mr. Parker said he wasn't going

361

to contest the divorce and they had the amount set, what would be the payment he was to make to her. This is my best recollection of what was said at that time.''

Appellant insists that the evidence fails to establish any agreement on the part of appellant to relinquish or release her right of dower; that the decree for divorce left her right of dower intact; that appellee seeks in this proceeding to amend or modify that decree, but the court has no jurisdiction to alter that decree in any manner of substance or change the rights of the parties thereto. In support of this contention counsel cite, among other cases, *Kent v. McCann,* 52 Ill. App. 305; *Knapp v. Knapp,* 303 Ill. 535; and *Barkman v. Barkman,* 94 Ill. App. 440. Counsel state that the notion that appellant would release a valuable right of dower in four improved tracts of land and also her right to alimony for a mere $750 does not seem plausible under any circumstances and insists that an oral promise to surrender or procure the surrender of dower is within the Statute of Frauds.

*Knapp v. Knapp,* 303 Ill. 535, was a proceeding to compel the former wife of the plaintiff to release her interest in certain real estate of the plaintiff or, in the alternative, to cancel her inchoate right of dower in said real estate as a cloud upon his title. The complaint alleged that the parties had been divorced; that the plaintiff was the owner of certain real estate and personal property, and that while the bill for divorce was pending and before the entering of a decree the parties entered into a certain written agreement upon the provisions of which the plaintiff based his right to relief. The opinion sets forth the substance of the agreement and held that a fair construction of its terms was that the wife only agreed to release her husband from obligations personal to him which the law imposes upon him because of the marriage rela-

tion. In its opinion the court said: "The wife who secures a divorce for the husband's fault does not thereby lose her dower right in his lands. It is clear from the contract and the averments in the bill that the personal obligations referred to were all the parties intended to cover by the contract. . . . The instrument relates only to personal obligations and does not mention interest in lands not described therein. The language is plain and unambiguous, and while appellant may have desired to have his lands released of the appellee's inchoate right of dower such release was not included in the contract, and this court cannot read into the contract a provision which it does not contain."

In *Barkman v. Barkman,* 94 Ill. App. 440, it appeared that a decree for divorce was awarded Mrs. Barkman on October 20, 1899, and directed the husband to pay her certain sums for solicitor fees and alimony. Subsequently, on April 9, 1900, at a different term of court than that at which the decree was rendered, the court, upon a hearing, modified the decree by divesting the wife of all her dower and homestead rights in the real estate of her husband. The court stated that such a modification was one of substance and related to a fixed right of the wife in the real estate of her husband and not to the alimony which was allowed by the decree and held that the court was without jurisdiction to make it.

■■ We have examined the other cases cited and relied upon by counsel for appellant and find nothing therein that aids us in a decision in this case. Counsel for appellee do not question the soundness of the principles of law enunciated in the foregoing cases or in any of the cases relied upon by counsel for appellant. The law is well settled that a spouse who is divorced for the fault of the other spouse is not thereby barred of dower in the real estate owned by the other spouse during the marriage. The statute so provides. (Ill. Rev.

363

Stat. 1949, chap. 3, par. 173 [Jones Ill. Stats. Ann. 110.269]; *Knapp v. Knapp*, 303 Ill. 535.) The complaint in the instant case alleged that the parties hereto entered into an oral property settlement or agreement by the terms of which appellant agreed, for a consideration, to release all her rights of every kind whatsoever in and to all of the property of appellee. Appellant denied that there ever was any such agreement or contract. Thus an issue of fact was presented by the pleadings. The master saw and heard the testimony of the several witnesses, and he found there was such a contract and that its terms and provisions had been proven. The chancellor, upon a review of the record, concurred in the findings of the master. This court has read the evidence found in this record, and we are unable to say that the findings of the decree are against the manifest weight of the evidence. On the contrary, we think the decree is amply sustained by the evidence found in this record. Her own attorney explained to her that after the decree of divorce was granted that so far as appellant's property was concerned it would be ''just as if you were never married,'' and she replied: ''That suits me fine.'' That she clearly understood that when she obtained the $750, her personal belongings and attorney fees she would have received everything she could ever hope to receive by reason of her marriage is fully sustained by the evidence. Appellant insisted that it should be worth as much to appellee to be divorced from her as it was for him to have been previously divorced from her cousin, and to this appellant agreed. The decree in that case, the provisions of which the evidence shows appellant was familiar with, expressly provided that each party should ''hold his and her property free and clear of any claim of the other that may have arisen or attached by virtue of the marital relation heretofore existing between the parties hereto.'' In our opinion,

364

appellant has received all she ever expected to receive from appellee and all that they orally agreed she should receive.

Under the evidence found in this record, it would be inequitable to deny to appellee the relief provided in the decree appealed from, and that decree will be affirmed.

*Decree affirmed.*